RILEY SAFER HOLMES & CANCILA LLP
ARIEL WILSON (MSB P84528)
awilson@rshc-law.com
2723 South State Street, Suite 150
Ann Arbor, MI 48104
Telephone:  (734) 773-4910
Facsimile:  (734) 773-4901

BRUCE WAGMAN
bwagman@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, CA  94104
Telephone:  (415) 275-8540
Facsimile:  (415) 275-8551

*Counsel for Defendant-Intervenors
Humane World for Animals, Animal Legal
Defense Fund, Animal Equality, The Humane
League, Farm Sanctuary, Compassion in
World Farming, Inc., Animal Outlook*

REBECCA CARY
STIJN VAN OSCH
RALPH HENRY
rcary@humaneworld.org
HUMANE WORLD FOR ANIMALS
1255 23rd St., NW, Suite 450
Washington, D.C. 20037
Telephone:  (202) 676-2330
Facsimile:  (202) 676-2357

*Counsel for Defendant-Intervenor
Humane World for Animals*

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>STATE OF MICHIGAN; TIMOTHY BORING, in his Official Capacity as Director of the Michigan Department of Agriculture and Rural Development; and DANA NESSEL, in her Official Capacity as Attorney General of Michigan,<br><br>                    Defendants, | Case No. 1:26-CV-00246-JMB-SJB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>The Honorable Jane M. Beckering<br><br>Action Filed: January 22, 2026 |

HUMANE WORLD FOR ANIMALS, et al.,

                Defendant-Intervenors,

ANIMAL WELLNESS ACTION, et al.,

                Defendant-Intervenors,

MICHIGAN ALLIED POULTRY
INDUSTRIES,

                Defendant-Intervenors.

REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ....................................................................................................... 1

II.    ARGUMENT ............................................................................................................... 1

       A.      This Case Is Not Justiciable .................................................................... 1

             1.       Plaintiff Has No Standing ........................................................... 1

             2.       This Is Not An EPIA Enforcement Suit ....................................... 4

       B.      SB 174 Is Not Preempted .......................................................................... 4

III.   CONCLUSION ........................................................................................................... 7

CERTIFICATE OF COMPLIANCE ................................................................................. 8

i

REPLY IN SUPPORT OF MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel Barez*,
   458 U.S. 592 (1982)..................................................................................................2

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008)....................................................................................................5

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*,
   870 F.3d 1140 (9th Cir. 2017) .................................................................................6

*Hargrove v. Healy*,
   155 F.4th 530 (6th Cir. 2025) ..................................................................................4

*KalshiEx LLC v. Johnson*,
   No. CV-26-01715-PHX-MTL, 2026 WL 1223373 (D. Ariz. May 5, 2026) ............2

*La Union del Pueblo Entero v. Abbott*,
   604 F. Supp. 3d 512 (W.D. Tex. 2022)...................................................................2, 4

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)..................................................................................................4

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
   551 U.S. 644 (2007)..................................................................................................7

*Stauffer v. Brooks Bros.*,
   619 F.3d 1321 (Fed. Cir. 2010)................................................................................2

*United Egg Producers v. Davila*,
   871 F. Supp. 106 (D.P.R. 1994), *aff'd on other grounds*, 77 F.3d 567
   (1st Cir. 1996) ...........................................................................................................5

*United States v. California*,
   No. 2:25-CV-06230-MCS-AGR, 2026 WL 784514 (C.D. Cal. Mar. 18, 2026)...............1, 2, 3

*United States v. City of Boston*,
   No. 25-12456-LTS, 2026 WL 1493706 (D. Mass. May 28, 2026) .......................2, 3

*United States v. Michigan*,
   817 F. Supp. 3d 630 (W.D. Mich. 2026) .................................................................1

*United States v. Nebraska*,
   No. 8:26-CV-172, 2026 WL 1584862 (D. Neb. June 3, 2026) ...............................3

REPLY IN SUPPORT OF MOTION TO DISMISS

*United States v. Supreme Court of New Mexico*,
   839 F.3d 888 (10th Cir. 2016) .......................................................................................2

*Upside Foods, Inc. v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*,
   171 F.4th 1239 (11th Cir. 2026) ..................................................................................4

*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000)......................................................................................................2

*Wyandotte Transportation Co. v. United States*,
   389 U.S. 191 (1967)......................................................................................................2

**Statutes & Regulations**

7 C.F.R. §§ 56.39-.43 .......................................................................................................7

21 C.F.R. § 118.12(d) ......................................................................................................7

21 U.S.C. § 1052(b) ......................................................................................................3, 6

USDA AMS, *United States Standards, Grades, and Weight Classes for Shell
   Eggs*, AMS 56 (July 20, 2000).....................................................................................5

**Other Materials**

Cal. Dep't of Food & Agric., Quarantine Notice #HQ-220223.Q1 (Feb. 23, 2022).......................5

*Good News: Egg Prices Are Down. Bad News: They're Hurting Farmers*,
   N.Y. Times (June 20, 2026)..........................................................................................1

H.R. Rep. No. 91-1670, 1970 WL 5922 (Dec. 3, 1970)..................................................6

*United States v. Alabama*, Complaint,
   No. 11-CV-02746, 2011 WL 3252582 (N.D. Ala., filed Aug. 1, 2011)....................2

*United States v. Arizona*, Complaint,
   No. 2:10-CV-01413, 2010 WL 2653363 (D. Ariz. filed July, 6, 2010) ...................2

REPLY IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

The United States has no concrete injury, as another court already found in materially similar circumstances. And its claim is meritless; the Egg Production Inspection Act ("EPIA") does not preempt Michigan's Hen Enclosure Law, and Plaintiff previously represented to the Supreme Court that a materially-identical law was not preempted.

## II.    ARGUMENT

### A.    This Case Is Not Justiciable

#### 1.    Plaintiff Has No Standing

Plaintiff's First Amended Complaint ("FAC") and Opposition brief double down on a *per se* theory of sovereign injury. FAC, Dkt. 30 at PageID.391; U.S. Opp. Br., Dkt. 39 at PageID.648 ("Opp.").[1] But its alleged injury—a "harm" to its "sovereign interest" in its "legal code"—is incognizable. *See* Defendant-Intervenors' Mem. In Support of Mot. to Dismiss, Dkt. 36, PageID.504-507 ("MTD"). "The mere existence of a preempted state law" does not "create[] a sovereign injury," nor a right that Plaintiff "may vindicate through suit." *United States v. California*, No. 2:25-CV-06230-MCS-AGR, 2026 WL 784514, at *3-4 (C.D. Cal. Mar. 18, 2026) (citations and footnotes omitted).

Article III requires a well-pled, redressable injury caused by defendants; the FAC fails there. *See United States v. Michigan*, 817 F. Supp. 3d 630, 646-47 (W.D. Mich. 2026). *California* is no "outlier" nor does it involve "materially different allegations." Opp. at PageID.650. It is a materially-identical challenge to a materially-identical law, rejecting the same standing theory. *See*

---

[1] Plaintiff in its Opposition conspicuously avoids any claim of price-based injury to itself as a market participant, presumably because the Michigan law is not actually causing such injury. *See, e.g.*, Julie Creswell, *Good News: Egg Prices Are Down. Bad News: They're Hurting Farmers*, N.Y. Times (June 20, 2026), https://www.nytimes.com/2026/06/20/business/egg-prices-down.html.

REPLY IN SUPPORT OF MOTION TO DISMISS

*California*, 2026 WL 784514 at *1; *see also United States v. City of Boston*, No. 25-12456-LTS, 2026 WL 1493706, at *9 (D. Mass. May 28, 2026) (rejecting similar argument).

Nor do Plaintiff's cases support its theory rejected in *California*. *Compare* Opp. at PageID.648-649 *with* Pl.'s Opp. in *California*, No. 2:25-cv-06230-MCS-AGR, Dkt. 68 at PageID.1285-1286 (filed Dec. 9, 2025) (citing many of the same cases). Several involved clear injuries to the government or entities represented *parens patriae*. *See* Compl. ¶ 49, *United States v. Alabama*, No. 11-CV-02746, 2011 WL 3252582 (N.D. Ala., filed Aug. 1, 2011) (diversion of federal resources); Compl. ¶ 4, *United States v. Arizona*, No. 2:10-CV-01413, 2010 WL 2653363 (D. Ariz. filed July, 6, 2010) (burden on federal enforcement); *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel Barez*, 458 U.S. 592, 608-10 (1982). Some relied on a statutory cause of action or injury. *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000); *Stauffer v. Brooks Bros.*, 619 F.3d 1321 (Fed. Cir. 2010); *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 535-540 (W.D. Tex. 2022) (Voting Rights Act specifically permits suit against states for violations). Several cases did not meaningfully analyze standing. *KalshiEx LLC v. Johnson*, No. CV-26-01715-PHX-MTL, 2026 WL 1223373, at *3 (D. Ariz. May 5, 2026) only cursorily discussed standing, and relied on cases involving clear injury like *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 191 (1967) (reimbursement for sunken vessel removal costs) and *United States v. Supreme Court of New Mexico,* 839 F.3d 888, 899 (10th Cir. 2016) (interference with federal prosecutors). Moreover, Plaintiff selectively quotes *Nebraska,* Opp. at PageID.650, which primarily focused on whether lack of opposition by the state meant there was no "case or controversy": "[T]he Constitution does not demand the absurd result that the United States has no means of judicial redress against unconstitutional state laws *when the state's executive branch happens to agree with the United States Attorney General about the merits of a preemption claim*."

2

REPLY IN SUPPORT OF MOTION TO DISMISS

*United States v. Nebraska*, No. 8:26-CV-172, 2026 WL 1584862, at *20 (D. Neb. June 3, 2026) (emphasis added).

Ultimately, the United States has not shown injury, causation, or redressability. It does not allege that any federal operations are impacted by Michigan's law, that federal costs have increased, that federal egg inspectors operate any differently, or any other meaningful effect. *See generally* FAC. Plaintiff asks for an advisory opinion that SB 174 is preempted. This is unwarranted, because Plaintiff has not claimed Michigan is enforcing its law against it. *See* FAC at PageID.392; *California*, 2026 WL 784514, at *3. In short, as in *Boston*, Plaintiff is left with a "challenge to the [law's] existence—in essence, [a] request for a declaratory judgment of the [law]'s invalidity." *Boston*, 2026 WL 1493706, at *9. "In these circumstances, injunctive relief could amount to no more than a declaration that the statutory provision [Plaintiff] attack[s] is unconstitutional, *i.e.*, a declaratory judgment." But "that is the very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.* at *9 (quoting *California v. Texas*, 593 U.S. 659, 670-73 (2022)).

If SB 174 injured Plaintiff, surely it would have pointed this out previously. Yet instead, Plaintiff argued the opposite—that California's AB 1437, analogous to Michigan's law, was *not* preempted by the EPIA and thus, did not infringe on its sovereign authority. MTD at PageID.506 (citing *Missouri v. California*, No. 22O148, Brief for the United States as Amicus Curiae (Nov. 29, 2018) ("SG Br.")). The United States has never explained this flip-flop in its position, despite multiple opportunities.[2]

---

[2] Nor do the United States' ill-explained references to interstate commerce, Opp. at PageID.651, change the analysis. The EPIA does not occupy the field of egg regulation: its preemption provision specifically leaves room for state regulation. 21 U.S.C. § 1052(b). And as the Court in *National Pork Producers Council v. Ross* held, the Commerce Clause does not preclude state regulation of the sales of cruel animal products. 598 U.S. 356, 390-91 (2023).

3

**2.      This Is Not An EPIA Enforcement Suit**

Plaintiff argues that rejecting standing would "cast doubt" on its enforcement authority. Opp. at PageID.653. But this is *not* an EPIA enforcement suit, FAC at PageID.383 (citing 21 U.S.C. § 1050), and a state does not violate the EPIA by promulgating an allegedly preempted law. Nor does Plaintiff allege Michigan has violated any provision of the EPIA. *See* MTD at PageID.507 (quoting *Upside Foods, Inc. v. Comm'r, Fla. Dep't of Agric. & Consumer Servs.*, 171 F.4th 1239, 1252 (11th Cir. 2026)). Enforcement cases cited by the United States like *La Union* are inapposite. This case does not involve a statute that can be violated by states simply passing laws, or that explicitly authorizes suits against states. *See La Union*, 604 F. Supp. 3d at 535-40. Plaintiff "misunderstand[s] . . . the nature of preemption" by arguing preemption is a statutory violation subject to enforcement. *Upside*, 171 F.4th at 1253.

**B.      SB 174 Is Not Preempted**

Plaintiff's reading of the EPIA's preemption clause is impossibly broad. First, it claims the phrase "in addition to or different from" prevents *any* state rules relating to "eggs shipped in interstate commerce," Opp. at PageID.655, 661-663, ignoring the text of the clause, *see* MTD at PageID.515. The government fails to fully reckon with this misreading, which would preempt virtually every state law related to eggs. Opp. at PageID.655-657.

"Congress' intent . . . primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (citation omitted); *see also Hargrove v. Healy*, 155 F.4th 530, 533 (6th Cir. 2025) (statutory interpretation must "consider the design of the full statute" and its "context") (citations omitted). The words "quality" and "condition" must be read in the context of the entire statutory scheme, which establishes a specific set of "standards" assessing an egg's observable, physical

characteristics[3]— standards that do not encompass hen housing. *See* MTD at PageID.510-517. The

most plausible reading here disfavors preemption, as Plaintiff *already argued* before the Supreme

Court. SG Br. at 18-20. "[W]hen the text of a pre-emption clause is susceptible of more than one

plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *Altria Grp.,*

*Inc. v. Good*, 555 U.S. 70, 77 (2008) (internal quotation marks and citation omitted).

Even when acknowledging the regulatory definitions of "quality" and "condition," the

United States reverts to broad, untethered dictionary definitions claiming the EPIA encompasses

anything that relates to the "essential character" of an egg. Opp. at PageID.658-659. This ignores

what federal inspectors primarily do under the EPIA's scheme: they use their senses to *physically*

inspect eggs for defects. *See* MTD at PageID.512-513 (citing 7 C.F.R. § 56.1; USDA AMS, *United*

*States Standards, Grades, and Weight Classes for Shell Eggs*, AMS 56 (July 20, 2000)).[4] As one

of Plaintiff's cited cases indicates, Opp. at PageID.655-656, the relevant "standards" to assess

preemption are the federal egg-grading standards, and that court looked at whether a state law on

egg weight and freshness "related to" factors regulated by those standards (like "shell condition,

air cell depth, firmness of the egg white, and yolk definition . . ."). *United Egg Producers v. Davila*,

871 F. Supp. 106, 108 (D.P.R. 1994), *aff'd on other grounds*, 77 F.3d 567 (1st Cir. 1996). Similarly,

in *Campbell v. Hussey*, the Court invalidated a state law that imposed grading-based label

regulations that differed from the "official standards" on tobacco grading and labeling. 368 U.S.

---

[3] Plaintiff argues that a law prohibiting the sale of eggs exposed to avian flu would be one of "quality" that is not a "physical characteristic" and that is presumably preempted. Opp. at PageID.657. But during the current avian flu outbreak, states *have* passed laws—that the United States has not challenged—imposing quarantines on poultry products and eggs. *See, e.g.*, Cal. Dep't of Food & Agric., Quarantine Notice #HQ-220223.Q1 (Feb. 23, 2022), https://www.cdfa.ca.gov/AHFSS/Animal_Health/pdfs/HQ-220223-1Q_Final.pdf. The U.S. has long encouraged and depended on states in this area.

[4] As for contamination by "smoke, chemicals, or other foreign material," Opp. at PageID.661, those are all physical aspects that can be determined by examining eggs.

REPLY IN SUPPORT OF MOTION TO DISMISS

297, 299-302 (1961). The Court's analysis looked at what the "official standards" were, and whether the challenged regulation fell within their scope. *Id.* at 302. Applying that same approach here shows that the federal standards do not encompass *any* housing requirements, ending the preemption analysis. *See* SG Br. at 18-19; *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1149 (9th Cir. 2017) (holding federal law "silent on the topic of animal husbandry" could not supplant state law on animal husbandry).

As with the Federal Meat Inspection Act's preemption clause at issue in *National Meat Association v. Harris*, the scope of the EPIA's preemption clause is delimited both by the phrase "in addition to or different from," and the specific text of the statute. *See* 565 U.S. 452, 459-60 & 467 n.10 (2012) (even the FMIA's broad preemption clause "leaves some room for the States to regulate"). The EPIA's preempts *only* state laws "requir[ing] the use of standards of quality, condition, weight, quantity or grade" that are "in addition to or different from" the "official Federal standards." 21 U.S.C. § 1052(b)(1); *see also* SG Br. at 19-20 (contrasting *National Meat* and EPIA preemption clauses). SB 174 is not such a law.

Plaintiff's attempt to bolster its argument with legislative history fares no better. The cited House Report, Opp. at PageID.643, confirms the EPIA's preemption clause serves a limited purpose — to address the "few states" that had egg-grading requirements *not* "patterned" on the federal standards, causing producers to "virtually grad[e] under two sets of requirements," thereby "hinder[ing] orderly marketing" and "increas[ing] marketing costs." H.R. Rep. No. 91-1670, 1970 WL 5922, at *5246-47 (Dec. 3, 1970). This Report indicates that the preemption clause was concerned with state *egg-grading laws* specifically, not state egg regulations writ large—as the clause's plain text confirms.

6

REPLY IN SUPPORT OF MOTION TO DISMISS

The salmonella regulations do not change the analysis either. *See* Opp. at PageID.660-661. The requirement that eggs cannot come from an environment contaminated with salmonella is one that *precedes* the grading process—it is not part of the grading process itself. *See* 7 C.F.R. §§ 56.39-.43 (section titled "*prerequisites* to packaging shell eggs"). Salmonella prevention is thus not a "standard of quality, condition, weight, quantity, or grade," but a separate requirement.

That understanding is confirmed by the existence of a *separate* regulatory preemption provision permitting states to impose more stringent salmonella prevention regulations than FDA. 21 C.F.R. § 118.12(d). If salmonella exposure is a "quality" of the egg, as Plaintiff claims, then *all* related state regulation—whether more or less stringent—would presumably be preempted by the EPIA, and the FDA's regulation would both be superfluous and inconsistent with the EPIA. *Cf. Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 668-69 (2007) (cautioning against interpretation rendering regulation "superfluous" and "mere surplusage").

## III.    CONCLUSION

For these reasons, the FAC should be dismissed with prejudice.

Dated: June 22, 2026                                RILEY SAFER HOLMES & CANCILA LLP

                                                    */s/*  Ariel Wilson
                                                    Ariel Wilson (MSB P84528)
                                                    awilson@rshc-law.com

                                                    *Counsel for Defendant-Intervenors*

REPLY IN SUPPORT OF MOTION TO DISMISS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant-Intervenors, certifies that this brief contains 2116 words, which complies with the word limit of Local Civil Rule 7.2(b)(i) and the April 6, 2026 Order of this Court at Dkt. 22. Microsoft Word (Office 365) version 2605 was used to generate this word count.

Dated: June 22, 2026      RILEY SAFER HOLMES & CANCILA LLP

                */s/*  Ariel Wilson
                Ariel Wilson (MSB P84528)
                awilson@rshc-law.com

                *Counsel for Defendant-Intervenors*

8

REPLY IN SUPPORT OF MOTION TO DISMISS