UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

STATE OF MICHIGAN, et al.,

Defendants.
_______________________________/

Case No. 1:26-cv-246

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiff, the United States of America, alleges that the country is facing a serious and sustained cost-of-living crisis, and that Michigan has contributed to that crisis by banning the sale of eggs from hens housed in certain conditions (the Sales Ban) (First Am. Compl. (FAC) [ECF No. 30] ¶¶ 1–3). Plaintiff contends that the Sales Ban conflicts with the Egg Product Inspection Act (EPIA), 21 U.S.C. §§ 1031–56 (FAC ¶¶ 4–8). Accordingly, Plaintiff brought this action against the State of Michigan, Director of the Michigan Department of Agriculture and Rural Development (MDARD) Timothy Boring, and Michigan Attorney General Dana Nessel (collectively, "Michigan") (*id.* ¶¶ 15–18). Plaintiff seeks a declaration that certain provisions of Michigan law are invalid and a permanent injunction prohibiting their enforcement on the ground that they violate EPIA and the Supremacy Clause (*id.* ¶ 9). After Plaintiff filed its Complaint, the Court permitted Michigan Allied Poultry Industries and several animal rights organizations to intervene as defendants (collectively, "Intervenors") (ECF Nos. 14, 21).

Now pending before the Court are the Motions to Dismiss filed by Michigan (ECF No. 32), Michigan Allied Poultry Industries (ECF No. 37), the Center for Humane Economy and Animal

Wellness Action (ECF No. 34), and the remaining intervenors (ECF No. 35). Defendants argue that the Court lacks jurisdiction because Plaintiff has failed to establish standing and that, in any event, Plaintiff fails to state a claim because EPIA does not preempt Michigan law. The Court agrees that Plaintiff has failed to adequately allege standing and therefore does not reach the preemption issue. Accordingly, the Court grants Defendants' Motions and dismisses this action for lack of subject-matter jurisdiction.

## I. BACKGROUND

### A. Statutory and Regulatory Background

Congress passed EPIA in 1970 principally as a food-safety and uniformity measure to address the "[l]ack of effective regulation for the handling or disposition of unwholesome, otherwise adulterated, or improperly labeled or packaged egg products and certain qualities of eggs" that could be injurious to the public welfare. 21 U.S.C. § 1031. It found that such lack of regulation "destroys markets for wholesome, not adulterated, and properly labeled and packaged eggs and egg products" and that "[u]nwholesome, otherwise adulterated, or improperly labeled or packaged products can be sold at lower prices and compete unfairly with the wholesome, not adulterated, and properly labeled and packaged products, to the detriment of consumers and the public generally." *Id*. Congress found that

> regulation by the Secretary of Agriculture and the Secretary of Health and Human Services, and cooperation by the States and other jurisdictions, as contemplated by this chapter, are appropriate to prevent and eliminate burdens upon such commerce, to effectively regulate such commerce, and to protect the health and welfare of consumers.

*Id.* It was Congress's policy "to provide for the inspection of certain egg products, restrictions upon the disposition of certain qualities of eggs, and uniformity of standards for eggs, and otherwise regulate the processing and distribution of eggs and egg products." *Id.* § 1032. Congress delegated to the Secretary of Agriculture authority to inspect egg products, *id.* §§ 1034, 1043;

promulgate rules and regulations necessary to carry out EPIA, *id.* § 1043; and enforce, in the name of the United States, EPIA's provisions, *id.* §§ 1041, 1050. EPIA preempts state and local laws that impose "standards of quality, condition, weight, quantity, or grade which are in addition to or different from the official Federal standards." *Id.* § 1052(b)(1).

Michigan passed the Animal Husbandry Industry Act in 1988 "to protect the health and safety of humans and the health, safety, and welfare of animals and to be consistent with applicable federal and state laws and shall be so construed." MICH. COMP. LAWS ANN. § 287.701(2). Michigan amended the Act in 2009 and 2019 to impose requirements for housing farms animals, including egg-laying hens. *See id.* § 287.746. For example, when hens are housed indoors, interior fencing that subdivides the flock must allow farm employees to walk through each contained or subdivided area to care for the hens. *Id.* § 287.746(1)(b)(i). Moreover, each hen must have a certain amount of usable floor space. *Id.*

Generally, Michigan law prohibits a business owner from knowingly selling eggs in Michigan that the business owner knows or should know are the product of an egg-laying hen that was confined in a manner inconsistent with Michigan's requirements (the Sales Ban). *Id.* § 287.746(4). MDARD and the Michigan Attorney General are empowered to seek injunctions restraining violations of Michigan's husbandry laws related to egg-laying hens. *Id.* § 287.746(6). Additionally, MDARD may impose civil fines and issue tickets for criminal violations. *Id.* § 287.744(13).

**B. Procedural Posture**

On January 22, 2026, Plaintiff filed a Complaint against Michigan (ECF No. 1). Intervenors moved to intervene on March 16 (ECF No. 8), March 23 (ECF No. 11), and April 3, 2026 (ECF No. 15). The Court granted these motions on April 2 and 6, 2026 (ECF Nos. 14, 21).

Defendants then filed several motions to dismiss the Complaint (ECF Nos. 23, 26, 27). The Court ordered Plaintiff to file an amended complaint or a response to the motions to dismiss (ECF No. 29). Plaintiff filed the First Amended Complaint, which contains a single count: "Violation of the Supremacy Clause – Preemption of" the Sales Ban (FAC, ECF No. 30 at PageID.389). Plaintiff alleges that MDARD has published its intent to enforce the Sales Ban through inspections, fines or other regulatory actions, and a complaint process for members of the public (FAC ¶¶ 43–46). But Plaintiff does not allege how Michigan's enforcement of the Sales Ban has interfered with its enforcement of EPIA.

Defendants filed the Motions on May 11, 2026 (ECF Nos. 32, 34, 35, 37). Plaintiff filed a combined Response (ECF No. 39), and Defendants filed Replies (ECF Nos. 40, 41, 42, 43). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Because the Court decides the Motions on standing, which is "a prerequisite to federal jurisdiction," the Court sets forth the standard under Federal Rule of Civil Procedure 12(b)(1) only. *McKee Foods Corp. v. BFP Inc.*, 173 F.4th 242, 257 (6th Cir. 2026) (quoting *Yoder v. Bowen*, 146 F.4th 516, 522 (6th Cir. 2025)). Rule 12(b)(1) authorizes a court to dismiss a claim for relief in any pleading if the court "lack[s] subject-matter jurisdiction." "[T]he plaintiff has the burden of proving jurisdiction in order to survive [a Rule 12(b)(1)] motion." *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (citation omitted).

"Rule 12(b)(1) motions . . . generally come in two varieties"—a facial attack or a factual attack. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "In a facial attack, a 'movant accepts the alleged jurisdictional facts as true and 'questions merely the sufficiency of the pleading' to invoke federal jurisdiction.'" *Polselli v. U.S. Dep't of the Treasury–Internal Revenue Serv.*, 23 F.4th 616, 621 (6th Cir.) (citations omitted), *aff'd sub nom. Polselli v. Internal Revenue Serv.*, 598 U.S. 432 (2023). *Id.* In reviewing a facial attack, "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Ohio Nat. Life*, 922 F.2d at 325. Because Defendants and Intervenors do not introduce any evidence to support their motions to dismiss, they make a facial attack on the Court's jurisdiction. The Court therefore takes the allegations in the First Amended Complaint as true.

**B. Discussion**

Article III of the United States Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. As such, "federal courts do not issue advisory opinions about the law—even when requested by the President." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378–379 (2024). Rather, plaintiffs—including the United States—"must have a 'personal stake' in the dispute," also called "standing." *Id.* at 379 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)); *see United States v. San Jacinto Tin Co.*, 125 U.S. 273, 285 (1888). The standing requirement "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). "[S]tanding also reflects a due regard for the autonomy of those persons likely to be most directly affected by a judicial order." *Id.* at 473. Accordingly, "[w]hen . . . a plaintiff's asserted injury

arises from the government's allegedly unlawful regulation . . . of *someone else,* much more is needed" for standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (emphasis in original).

To establish standing, a plaintiff must demonstrate that (1) it has suffered or likely will suffer an injury in fact, (2) the injury was caused or will be caused by the defendant, and (3) the injury likely would be redressed by the requested judicial relief. *All. for Hippocratic Med.*, 602 U.S. at 380 (citations omitted). An injury in fact must be concrete, immediate, and particularized to the plaintiff. *Id.* at 381 (citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citations omitted) (internal quotations omitted). "[G]eneral legal, moral, ideological, or policy objection[s]" are not injuries in fact. *All. for Hippocratic Med.*, 602 U.S. at 381.

Plaintiff has not met its burden to show an injury in fact. To start, because Plaintiff is not a producer, distributor, or seller of eggs—the "object[s] of" the Sales Ban—Plaintiff's standing is "substantially more difficult to establish." *Lujan*, 504 U.S. at 562 (internal quotations omitted) (citing *Allen v. Wright*, 468 U.S. 737, 758 (1984)). Plaintiff contends that it has suffered an injury in fact because "the federal government has a unique and concrete interest in the enforcement of federal law" (Resp., ECF No. 39 at PageID.648). Plaintiff likens its challenge to civil enforcement actions, including environmental-protection, civil-rights, and consumer-protection suits, where, according to Plaintiff, it need not demonstrate any burden on federal operations (*id.*). But Plaintiff is not suing to enforce EPIA; it is suing under the Supremacy Clause (*compare* FAC ¶¶ 51–65 (asserting a single cause of action under the Supremacy Clause) *with* 21 U.S.C. § 1050 (authorizing the United States to bring an action "specifically to enforce, and to prevent and restrain violations of," EPIA)). The Supremacy Clause does not itself confer a federal enforcement power on Plaintiff or dispense with the requirement that Plaintiff establish a concrete injury to invoke the Court's

jurisdiction. Rather, Plaintiff's claim that state law is preempted by federal law is distinct from an action brought by the United States to enforce EPIA. Plaintiff therefore cannot establish standing merely by invoking the federal government's interest in enforcing EPIA.[1]

Plaintiff alternatively asserts that it has suffered an injury to its sovereignty because Michigan violated EPIA by enacting and enforcing the Sales Ban (Resp., ECF No. 39 at PageID.648–49). But Michigan cannot violate EPIA merely by enacting legislation because EPIA does not regulate how States may legislate. As the Supreme Court has explained, "regardless of the language sometimes used by Congress and this Court, every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018). Thus, EPIA's preemption provision regulates the conduct of egg producers, distributors, and sellers; it does not impose a legal obligation on Michigan or otherwise prohibit the State from enacting the Sales Ban. And the mere existence of a conflict between the state and federal law does not itself injure Plaintiff. If the Sales Ban is preempted, it is invalid under the Supremacy Clause, regardless of whether Plaintiff brings an action seeking to invalidate it. *See In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 859 (6th Cir. 2023) (quoting *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991)) ("[S]tate laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid" (internal quotations omitted)). Plaintiff therefore must allege some injury beyond the mere existence of a potentially preempted state law to establish an injury in fact.

[1] For the same reason, Plaintiff's reliance on *La Unión del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512 (W.D. Tex. 2022) (Resp., ECF No. 39 at PageID.649), is mistaken. There, the United States sued to enjoin Texas from violating the Voting Rights Act of 1965 and the Civil Rights Act of 1964. *Id.* at 517–18. Here, Plaintiff does not sue Michigan for violating EPIA; it sues Michigan under the Supremacy Clause.

Plaintiff believes that it has demonstrated standing by alleging that "Michigan actively administers and enforces the Sales Ban through certification requirements, inspections, civil and criminal penalties, and a public complaint mechanism soliciting reports of suspected violations" (Resp., ECF No. 39 at PageID.651 (citing FAC ¶¶ 43–50)). Yet conspicuously absent from the Complaint are non-conclusory allegations regarding how Michigan's enforcement of the Sales Ban undermines Plaintiff's enforcement of EPIA. *But cf., e.g.*, *United States v. West Virigina*, 295 U.S. 463, 473 (1935) (citations omitted) ("We [may] assume, for present purposes, that the United States as sovereign has a sufficient interest in the maintenance of its control over navigable waters, and in the enforcement of the Federal Water Power Act, to enable it to maintain a suit in equity to restrain threatened unlawful invasions of its authority."); *United States v. Ekblad*, 732 F.2d 562, 563 (7th Cir. 1984) ("The United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental functions."); *Island Airlines, Inc. v. C.A.B.*, 352 F.2d 735, 744 (9th Cir. 1965) (citations omitted) ("The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies."). Plaintiff has not alleged sufficient facts to permit the Court to infer that Plaintiff has suffered any injury in fact to its EPIA enforcement efforts.[2]

---

[2] Such allegations of impeded federal enforcement were present in *KalshiEX LLC v. Johnson*, 832 F. Supp. 3d 954 (D. Ariz. 2026), a non-binding district-court case that Plaintiff cites (Resp., ECF No. 39 at PageID.649). There, the United States alleged that Arizona was interfering with the Commodity Futures Trading Commission's sole authority to regulate Kalshi's products by filing a criminal information against Kalshi for engaging in conduct that the Commission permitted. Compl. ¶¶ 1–6, *KalshiEX LLC*, 832 F. Supp. 3d 954 (No. 2:26-cv-2246). The district court concluded that the Commission had suffered an injury in fact because "[t]he federal government 'may sue to protect its interests' . . . ." *KalshiEX*, 832 F. Supp. 3d at 960 (quoting *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967)). Here, on the other hand, Plaintiff has not alleged any impeded or conflicting enforcement efforts. Rather, Plaintiff has asserted only a

In support of its standing argument, Plaintiff cites *Arizona v. United States*, 567 U.S. 387 (2012), for the proposition that "the United States may seek relief against enforcement of state laws that Congress has expressly preempted" (Resp., ECF No. 39 at PageID.648). In that case, the United States sued Arizona to prevent it from enforcing state laws related to immigration, most of which the Court found preempted. *Arizona*, 567 U.S. at 392–94, 400–15. But Arizona did not challenge, and the Supreme Court did not analyze, the United States' standing, likely because the United States asserted concrete, particularized injuries resulting from Arizona's immigration laws. For example, the United States alleged that Arizona's laws "will impose significant and counterproductive burdens on federal agencies charged with enforcing the national immigration scheme, diverting resources and attention from the dangerous aliens who [sic] the federal government targets as its top enforcement priority." Compl. ¶ 4, *United States v. Arizona*, 703 F. Supp. 2d 980 (D. Ariz. 2010) (No. 2:10-cv-1413). The United States also alleged that Arizona's laws "will interfere with vital foreign policy and national security interests by disrupting the United States' relationship with Mexico and other counties." *Id.* The First Amended Complaint lacks similarly concrete and particularized injuries. Thus, *Arizona* does not show that Plaintiff has suffered an injury.[3]

---

conflict between federal law and a state law that the state enforces, which does not alone demonstrate that Plaintiff has suffered an injury in fact.

[3] Several of the non-binding cases that Plaintiff cites likewise involved challenges by the United States to state laws concerning immigration (Resp., ECF No. 39 at PageID.649). *See United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012); *United States v. California*, 921 F.3d 865 (9th Cir. 2019); *United States v. Nebraska*, 835 F. Supp. 3d 962 (D. Neb. 2026). The injuries alleged by the United States in those cases were comparable to those identified in *Arizona* and were sufficiently concrete and particularized to support Article III standing—unlike Plaintiff's asserted injuries here. Similarly, in *United States v. California*, No. 2:19-cv-2142, 2020 WL 8183945, at *3 (E.D. Cal. Feb. 26, 2020), the United States alleged a concrete and particularized injury arising from the State's "usurpation of federal authority to conduct foreign affairs." Plaintiff identifies no comparable invasion of a federal function or authority here. Indeed, Plaintiff's asserted injury is particularly difficult to reconcile with the purpose of EPIA: Plaintiff invokes a federal statute

Next, Plaintiff relies on *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000) (Resp., ECF No. 39 at PageID.648). There, the respondent brought a qui tam action against the petitioner, a state agency, alleging that it had submitted false claims to the Environmental Protection Agency (EPA) in connection with federal grant programs the EPA administered. *Id.* at 770. The Court explained that such fraud injured the United States' "sovereignty arising from violation of its laws (which suffices to support a criminal lawsuit by the Government) . . . ." *Id.* at 771. The injury in *Vermont Agency* therefore arose from conduct that allegedly violated federal law and directly impaired the United States' sovereign interest in enforcing that law and protecting federal funds. This case is different. Michigan has not violated EPIA or the Supremacy Clause merely by enacting the Sales Ban. As the Supreme Court has explained, federal preemption operates by regulating private conduct, not by directing the states how to legislate. *See Murphy*, 584 U.S. at 479. Thus, even assuming that EPIA preempts the Sales Ban, the consequence is that the conflicting state law is invalid and unenforceable—not that Michigan has violated EPIA or otherwise injured the federal sovereign. Plaintiff identifies no federal operation, interest, or property that Michigan has impaired by enacting or enforcing the Sales Ban. Its alleged injury therefore consists only of the existence of the state law that Plaintiff contends conflicts with federal law. That alleged conflict may present a question of preemption, but it does not, without more, constitute the concrete and particularized injury necessary for Plaintiff to invoke the jurisdiction of this Court.

---

enacted to protect consumers from unwholesome, adulterated, or improperly labeled or packaged eggs, yet seeks to invalidate a state law that restricts the sale of eggs that do not satisfy Michigan's requirements that were designed to "protect the health and safety of humans," among other goals. MICH. COMP. LAWS ANN. § 287.701(2). Whatever the merits of Plaintiff's preemption claim, the asserted conflict between EPIA and the Sales Ban does not, without more, constitute a concrete and particularized injury sufficient to confer standing.

Plaintiff quotes *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982) (Resp., ECF No. 39 at PageID.648), which states that a sovereign has an interest in "creat[ing] and enforc[ing] a legal code" and being "recogniz[ed] [by] other sovereigns—most frequently [with respect to] the maintenance and recognition of borders." *Id.* at 601. But the Court did not address whether the United States suffers an injury in fact when a state enacts and enforces a preempted law. Rather, the Court held that states have parens patriae standing to sue on their citizens' behalf in certain circumstances. *Id.* at 600–08. Thus, Plaintiff's selective quotation of *Alfred L. Snapp* does not further its standing argument.

At bottom, Plaintiff's theory of standing is that it suffers an injury in fact whenever a state enforces a law that conflicts with federal law, even if the state's enforcement does not interfere with Plaintiff's own efforts to enforce federal law. But, as explained above, the mere existence of a state law that is preempted—and therefore invalid—does not itself injure Plaintiff. Nor does Michigan's enforcement of the Sales Ban, without more, establish a concrete and particularized injury to Plaintiff's enforcement of EPIA. Because Plaintiff has not plausibly alleged any other injury in fact, it lacks Article III standing, and this Court lacks subject-matter jurisdiction. *See McKee Foods Corp.*, 173 F.4th at 257. Accordingly, Plaintiff's claim must be dismissed. *See Arbaugh*, 546 U.S. at 515.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 32, 34, 35, 37) are GRANTED on the ground that the Court lacks subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that the First Amended Complaint (ECF No. 30) is DISMISSED without prejudice. *See* FED. R. CIV. P. 41(b).

Because this Opinion and Order resolves all pending claims, the Court will also enter a Judgment to close this case. *See* FED. R. CIV. P. 58.

Dated: October 7, 2026

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge